1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                                          )
THEODORA RESCUE COMMITTEE,          )
                                                          )          No. C14-0981RSL
                              Plaintiff,                )
                                                          )
          v.                                              )
                                                          )          ORDER GRANTING DEFENDANT'S
THE VOLUNTEERS OF AMERICA OF       )          MOTION FOR SUMMARY
WASHINGTON, *et al.*,                        )          JUDGMENT
                                                          )
                              Defendants.            )
_____)

          This matter comes before the Court on "Defendant The Volunteers of America of

Washington's Motion for Summary Judgment" (Dkt. # 20) and plaintiff's "Cross-Motion for

Summary Judgment on Notice & Civil Conspiracy Issues" (Dkt. # 29).  Summary judgment is

appropriate if, viewing the evidence in the light most favorable to the nonmoving party, "the

movant shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law." Fed. R. Civ. P. 56(a); L.A. Printex Indus., Inc. v. Aeropostale,

Inc., 676 F.3d 841, 846 (9th Cir. 2012).  The moving party "bears the initial responsibility of

informing the district court of the basis for its motion." Celotex Corp. v. Catrett, 477 U.S. 317,

323 (1986).  It need not "produce evidence showing the absence of a genuine issue of material

fact" but instead may discharge its burden under Rule 56 by "pointing out ... that there is an

absence of evidence to support the nonmoving party's case." Id. at 325.  Once the moving party

has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to

designate "specific facts showing that there is a genuine issue for trial." <u>Id.</u> at 324. "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." <u>Arpin v. Santa Clara Valley Transp. Agency</u>, 261 F.3d 912, 919 (9th Cir. 2001); <u>Intel Corp. v. Hartford Accident & Indem. Co.</u>, 952 F.2d 1551, 1558 (9th Cir. 1991). "An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party." <u>In re Barboza</u>, 545 F.3d 702, 707 (9th Cir. 2008) (internal citations omitted).

Having reviewed the memoranda, declarations, and exhibits submitted by the parties,[1] having heard the arguments of counsel, and taking the evidence in the light most favorable to plaintiff, the Court finds as follows:

## BACKGROUND

Plaintiff Theodora Rescue Committee is an organization of current residents of "The Theodora," a 114-unit supportive housing facility located in the Ravenna neighborhood of Seattle. The owner of the building, defendant The Volunteers of America of Washington ("VoA"), is the local branch of a national non-profit that provides a wide variety of services to individuals and communities around the country. The Theodora was opened in the mid-1960s with the help of a low interest mortgage loan through the "Supportive Housing for the Elderly" program of Section 202 of the Housing Act of 1959. As part of the financing arrangement, VoA was obligated to keep rents affordable for low income, elderly residents throughout the term of the loan, which expired on or about August 1, 2014. In 1985, VoA obtained additional federal assistance by entering into a Section 8 Housing Assistance Payments ("HAP") Contract with the U.S. Department of Housing and Urban Development. The Section 8 program was designed to assist HUD-financed projects that were facing "serious financial problems" and provided VoA

---

[1] Although the email sent by Eliana Horn to at least one VoA donor has limited relevance, neither the email nor the VoA's arguments regarding its accuracy or propriety are scandalous, impertinent, or unduly prejudicial. Plaintiff's motion to strike (Dkt. # 44) is DENIED.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT          -2-

1   with a monthly sum to cover a portion of the rent due from tenants who qualified on the basis of
2   income.  VoA renewed the Section 8 contract from 1985 to 2013.

3            It is undisputed that VoA has been losing money operating The Theodora for a
4   number of years and that it has taken more than $1.6 million in advances from the national
5   Volunteers of America organization to make up the shortfall.  As the Section 202 loan
6   approached maturity, VoA evaluated options for renovating and revitalizing the property to
7   make it more attractive to potential tenants in the hopes of reversing the operating losses.  VoA
8   was unable to secure financing, however, and decided to sell the property.

9            In September 2013, VoA listed the property with a relator and instructed him to
10  market the property to nonprofits first in the hope of preserving the building as low-income
11  housing.  VoA renewed its Section 8 participation for a one year term, and on October 1, 2013,
12  notified The Theodora residents that the Section 8 subsidies would expire on October 31, 2014.
13  Decl. of Robert Gibson (Dkt. # 23), Ex. F at 1.  After a month of contacting nonprofits in what
14  plaintiffs describe as a rather haphazard and unmotivated way, VoA offered the property at
15  market price to all comers.  VoA entered into a purchase and sale agreement with defendant
16  Goodman Real Estate, Inc., on December 23, 2013.  The agreement provided for a purchase
17  price of $7.1 million.  It is undisputed that no nonprofit organization has made an offer on the
18  property to date:  those that were or are interested are not able to compete with the purchase
19  price negotiated with Goodman Real Estate.

20           As part of the sales agreement, VoA promised that, "except as otherwise required
21  by the HAP Contract, [it would] not lease, rent or otherwise permit any person or persons to
22  occupy any portion of the Property other than pursuant to Tenant Leases existing as of the date
23  hereof (i.e. to not enter into leases for units as they become vacant during the term of this
24  Agreement)."  Decl. of Camille Taylor Ralston (Dkt. # 24), Ex. D at ¶ 8(v).  VoA also took upon
25  itself the obligation to provide the notice to tenants required under RCW 59.28.040.  Id.  That
26  notice, which informed the tenants that the final payment on the Section 202 would be made on

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT          -3-

1   July 1, 2014, that the Section 8 rental assistance contract would expire on October 31, 2014, and
2   that The Theodora may thereafter "no longer have limits on the rent or requirements to rent to
3   low-income people," was issued on February 11, 2014.  Id., Ex. A at 1.
4           On March 7, 2014, defendants amended the purchase and sale agreement to
5   postpone closing for one month to December 4, 2014, and to specify that both VoA and the
6   purchaser would apply to the City of Seattle for tenant relocation licenses.  Decl. of Camille
7   Taylor Ralston (Dkt. # 24), Ex. D, First Amendment at ¶ 4 and ¶ 7.  On March 12, 2014, VoA
8   circulated a flyer to tenants at a residents' meeting providing a timetable for obtaining relocation
9   assistance under the Seattle Tenant Relocation Ordinance.  Decl. of Jack L. Jones (Dkt. # 42),
10  Ex. A.  In response to requests from tenants, VoA followed up with a more detailed
11  memorandum offering $6,000 in relocation assistance from VoA and another $3,188 for eligible
12  residents of Seattle.  Decl. of Robert Gibson (Dkt. # 23), Ex. G at 1.
13          Plaintiff filed this lawsuit on July 2, 2014, the day after VoA made its final
14  payment on the Section 202 loan.  Plaintiff asserts violations of the Fair Housing Act (42 U.S.C.
15  § 3604), the Washington Law Against Discrimination (RCW 49.60.222), the Seattle Open
16  Housing Ordinance (SMC 14.08), and the notice requirements of RCW 59.28.040, as well as
17  claims of unjust enrichment and civil conspiracy.
18                                          **DISCUSSION**
19  **A. FAIR HOUSING CLAIM**
20          Although plaintiff identifies three separate basis for its unlawful discrimination in
21  housing claims, it discusses the different laws only for the purpose of showing that they all
22  preclude disparate impacts on protected groups and that a single act can constitute unlawful
23  discrimination in housing.  See Opposition (Dkt. # 29) at 9 and 12-13.  Otherwise, the parties
24  agree that evaluating claims of disparate impact in housing involves the burden-shifting analysis
25  developed in the Title VII context.  Plaintiff therefore has the initial burden of establishing that a
26  facially neutral act or practice had "a significantly adverse or disproportionate impact on persons

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT          -4-

1   of a particular type." Pfaff v. U.S. Dep't of Hous. & Urban Dev., 88 F.3d 739, 745 (9th Cir.

2   1996).  Discriminatory intent need not be shown in a disparate impact case, but plaintiff must do

3   more than simply raise an inference that a protected group will be adversely impacted:  it must

4   actually prove that a discriminatory impact has or will occur.  Gamble v. City of Escondido, 104

5   F.3d 300, 306 (9th Cir. 1996).  If plaintiff meets its initial burden, defendants may rebut the

6   inference of discrimination by demonstrating that a "legally sufficient, nondiscriminatory

7   reason," "a compelling business necessity," and/or "one or more substantial, legitimate,

8   nondiscriminatory interests" justifies the impact.  Ojo v. Farmers Group, Inc., 600 F.3d 1205

9   (9th Cir. 2010); Affordable Hous. Dev. Corp. v. City of Fresno, 433 F.3d 1182, 1195 (9th Cir.

10  2006); 24 C.F.R. § 100.500(c)(2).[2]  If plaintiff does not come forward with evidence showing

11  that defendants' justification was a sham or mere pretext, the disparate impact claim fails.

12  Community House, Inc. v. City of Boise, 490 F.3d 1041, 1053 (9th Cir. 2007).

13          The Court will assume, for purposes of this motion, that a single act can be the

14  basis of a disparate impact claim and that converting The Theodora into market-rate housing will

15  have a significantly adverse and disproportionate impact on disabled persons.[3]  VoA has come

16  forth with a lawful, nondiscriminatory, and compelling business justification for its decision to

17  sell the property, however:  the current operations are losing money, significant capital

18  expenditures would be necessary to bring operations back into the black, and financing for

19  

20      [2]  The continued viability of HUD's disparate impact rules has been called into question.  See

21  Am. Ins. Ass'n v. U.S. Dep't of Hous. and Urban Dev., C13-0966(RLJ) (D.D.C. Nov. 3, 2014).
    Nevertheless, the Court has evaluated defendant's rebuttal evidence under all of the potentially

22  applicable standards.

23      [3]  The facts related to the latter issue are not as clear as one would expect.  The Theodora was

24  brought into service to supply affordable housing to the elderly, and plaintiff provides only conclusory
    statements in support of its underlying assumption that all or most of the existing or potential tenants of

25  The Theodora are disabled.  In addition, plaintiff attempts to show a disparate impact by focusing on a
    very small geographic area, namely the Ravenna neighborhood of Seattle.  The Court is unaware of any

26  case law supporting the use of such an arbitrary unit for these purposes.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT          -5-

repairs and renovations was unavailable.  The need to avoid continuing losses for itself and its

parent organization justifies the sale of the building.  Plaintiff does not, in fact, dispute the

compelling business need to sell the property.  Rather, it challenges the decision to sell the

property at market value, arguing that VoA should have offered The Theodora for sale to a

preservation-minded buyer at a discounted price in order to avoid the presumed discriminatory

effect on the disabled population in Ravenna.

To the extent plaintiff is arguing that VoA has no legitimate business justification

for selling the property at market value, the argument is unpersuasive.  Plaintiff does not

identify, and the Court has not found, any case or legal precept that would require a landowner

who has decided to sell a building for legitimate, nondiscriminatory reasons to change its plans

because there might be a disparate impact or to take steps to control or influence the operations

of the next owner.  The fact that VoA is a nonprofit organization does not impose any additional

obligations in this context.  VoA not only has a substantial and legitimate interest in selling the

property, but also in reaping the benefits associated with long-term ownership of real estate in

the Seattle market.  Those earnings can be used to retire debt and further VoA's operations at

other locations in the State of Washington.  Such substantial, legitimate, and nondiscriminatory

interests justify acts despite the fact that they will have disparate impact on a protected group.

Plaintiff is, in effect, demanding that VoA forego millions of dollars available on the market in

order to subsidize the existing tenants' continued residency in Ravenna and/or another

nonprofit's operations there, at the expense of the projects, groups, and interests supported by

VoA.  Neither the law nor public policy considerations would support such a forced subsidy.

Nor has plaintiff shown that VoA's justification for a market rate sale was a sham

or mere pretext.  Other than suggesting that VoA does not need or deserve to make money on the

sale of The Theodora, plaintiff offers no evidence from which one could reasonably infer that the

substantial, legitimate, and compelling needs that drove VoA to put the building on the market,

pay off its debts, and obtain funding for its other operations were overstated or in any way a

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT          -6-

sham.  Even if the Court assumes that the Ninth Circuit will ultimately allow plaintiffs to rebut a showing of business necessity simply by identifying an alternative act or practice that would serve the identified interests with less discriminatory impact,[4] plaintiff has not made that showing.  First, VoA's interest is not simply to stop the hemorrhaging and divest itself of The Theodora:  it also has a legitimate, substantial interest in maximizing the funds available to continue its nonprofit operations elsewhere in the State.  Plaintiff has not alleged, much less shown, that another preservation-minded organization could offer anything close to the $7.1 million negotiated with Goodman Real Estate.  Thus, no alternative that would satisfy all of VoA's substantial and legitimate interests has been identified.  Second, even if VoA were willing to offer The Theodora at a discount to another nonprofit, the possibility of an alternative sale remains speculative notwithstanding the expressions of interest from other nonprofits operating in the area.  Whether those organizations could locate funding sources that escaped VoA's attention and negotiate a mutually-acceptable purchase price and timetable is unknown. Finally, there is no reason to assume that a sale to another nonprofit would ultimately benefit the existing tenants or better protect the interests of the disabled.  It is undisputed that The Theodora needs significant repairs and renovations regardless of who owns it.  None of the other nonprofits has indicated how it would go about rehabilitating and operating the building, however, and there is no evidence from which one could reasonably conclude that the existing tenants would be able to remain in their units throughout the transition or that the new owner would emphasize the provision of housing for the disabled.  See Decl. of Sharon Lee (Dkt. # 36) at ¶¶ 2-3 (The Low-Income Housing Institute provides housing to "a diverse population that

---

[4] Affordable Hous. Dev., 433 F.3d at 1195 ("We need not and do not decide what other defenses exist to a claim of disparate impact or whether such a showing by a defendant shifts the burden back to the plaintiff to show that no alternative would serve that interest with less discriminatory effect."); Gallagher v. Magner, 619 F.3d 823, 837 (8th Cir. 2010) (burden shifts back to plaintiff to "offer a viable alternative that satisfies [defendant's] legitimate policy objectives while reducing the  . . . discriminatory impact" of the sale).

includes individuals, families, seniors, veterans, people with disabilities, and formerly homeless individuals."). Plaintiff has failed to show that VoA's articulated justifications for selling The Theodora at market value are a sham or even that an alternative transaction that would have satisfied VoA's substantial and legitimate interests was available.

Plaintiff is essentially arguing that the disabled population of the Ravenna neighborhood needs affordable housing in the community and that a market sale of The Theodora will ultimately result in the loss of such housing with significant adverse impacts on the disabled. The lack of affordable housing in Ravenna for the vulnerable population served by The Theodora cannot be questioned. But a great need is not, in and of itself, actionable under federal law. See Gamble, 104 F.3d at 306. Even if the Court presumes a discriminatory impact here, the sale is justified by VoA's legitimate, substantial, and nondiscriminatory business interests, and there is no evidence from which one could reasonably infer sham or pretext for discrimination. Plaintiff's housing discrimination claims therefore fail as a matter of law.

**B. Violation of RCW 59.28**

RCW 59.28.040 requires owners of federally assisted housing units to notify its tenants, the municipality, the local public housing agency, and the State Department of Commerce that a rental assistance contract was set to expire. The notice must contain specific information, including "the owner's plans for the project, including any timetables or deadlines for actions to be taken by the owner and any specific federal, state, or local agency approvals that the owner is required to obtain." RCW 59.28.060(1)(c). Owners are required to give tenants twelve months' notice that the assistance contract will expire. If the notice is sent after that date, the owner is precluded from evicting a tenant until at least twelve months after the notice is actual served. RCW 59.28.070.

Plaintiff argues that the notice provided by VoA on February 11, 2014, was untimely and failed to disclose a local approval that VoA was required to obtain to effectuate its plans for the property. Although the notice was not sent out twelve months before the HAP

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT      -8-

1  Contract expired, it expressly provides that no change in rent or the terms of the rental

2  agreement would occur before March 1, 2015, giving tenants a full year's notice of the

3  forthcoming change.  Any failure to give notice one year before the assistance contract ended

4  has therefore been remedied as specified in RCW 59.28.070.  No other remedy is required or

5  appropriate regarding the timing of the notice.

6          With regards to the content of the notice, VoA clearly identified its plans ("selling

7  the building") and a number of actions it would take to effectuate that plan.  Decl. of Camille

8  Taylor Ralston (Dkt. # 24), Ex. A.  Plaintiff states, without any supporting argument or

9  regulatory analysis, that "[o]ne local agency approval that needed to be disclosed [in the notice]

10 was a Tenant Relocation License from Seattle's Department of Planning & Development."

11 Opposition (Dkt. # 29) at 7.  Neither the Seattle Municipal Code nor the purchase and sale

12 agreement support plaintiff's argument.  The purpose of Chapter 22.210 is to ensure that low-

13 income tenants displaced by demolition, substantial rehabilitation, and/or change of use get the

14 relocation assistance to which they are entitled.  SMC 22.210.020(B).  The owner of such a

15 property is required to file an application for a tenant relocation license, provide relocation

16 assistance information packets to its tenants, pay a portion of the relocation assistance, and

17 provide at least ninety days' notice of the proposed change.  SMC 22.210.060.  Under the

18 original purchase and sale agreement, ownership of The Theodora was scheduled to transfer to

19 Goodman Real Estate on November 7, 2014, leaving ample time for that entity to satisfy the

20 requirements of the Tenant Relocation Assistance Ordinance.  Decl. of Camille Taylor Ralston

21 (Dkt. # 24), Ex. D at ¶ 6.1.  VoA and Goodman Real Estate explicitly agreed that it was the

22 latter's responsibility to apply for a tenant relocation license and set out the deadline for the

23 application.  Id. at ¶ 5.7.  VoA, which anticipated transferring ownership of The Theodora long

24 before any of the triggering events under Chapter 22.210 occurred, was not under any obligation

25 to apply for a tenant relocation license when it sent out the RCW 59.28 notice on February 11,

26 2014.  Thus, the notice to tenants was accurate.  Plaintiff has not argued that there was a on-

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT          -9-

1  going duty to supplement the notice as circumstances changed throughout the twelve month

2  period.  Plaintiff has therefore failed to show a violation of RCW 59.28.

3  **C.  Unjust Enrichment**

4          A claim of unjust enrichment involves three elements:  "(1) the defendant receives

5  a benefit, (2) the received benefit is at the plaintiff's expense, and (3) the circumstances make it

6  unjust for the defendant to retain the benefit without payment."  Young v. Young, 164 Wn.2d

7  477, 484 (2008).  The nature of plaintiff's unjust enrichment claim is unclear.  It appears that

8  plaintiff is arguing that VoA and/or Goodman Real Estate have benefitted from the fact that

9  many residents have already moved out of The Theodora and their units were not re-let.[5]  While

10 the reduction in the number of tenants would certainly make any demolition or change of use

11 transition following the sale of the building easier to accomplish, neither plaintiff nor its

12 members provided this benefit or are otherwise entitled to be compensated for whatever "value"

13 a lower census may have to a future developer.  Plaintiff's unjust enrichment claim fails as a

14 matter of law.

15 **D.  Civil Conspiracy**

16         Under Washington law, liability for civil conspiracy requires clear, cogent, and

17 convincing evidence that defendants entered an agreement to accomplish an unlawful purposes

18 or a lawful purpose by unlawful means.  Alexander v. Sanford, 181 Wn. App. 135, 180-81

19 (2014).  Plaintiff argues that VoA's agreement that it would not re-let vacant units violated its

20 obligations to diligently market its subsidized housing units and to take "all feasible actions to

21 fill vacancies."  Opposition (Dkt. # 29) at 23 n. 117.  VoA argues that the agreement is not as

22 stark as plaintiff suggests and that it did, in fact, continue to advertise and rent units throughout

23

24         [5]  The complaint alleges that "[a]ny consideration VoA has received, or stands to receive, from
improperly causing residents to leave The Theodora and failing to re-let their units - thus represents
25 unjust enrichment."  Complaint (Dkt. # 1) at ¶ 3.C.6.  In its opposition, plaintiff states "Defendant
Goodman stands to benefit unjustly from this agreement, which has led to about 80 precious low-income
26 units at The Theodora sitting empty."  Opposition (Dkt. # 29) at 23.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT        -10-

1  the relevant period.  Such issues cannot be decided at the outset of the case and without the

2  benefit of discovery.  The Court will therefore assume that VoA and Goodman Real Estate

3  entered into an agreement to accomplish a lawful purpose (change-of-use) by unlawful means

4  (failing to re-let vacant units).

5          Nevertheless, plaintiff's civil conspiracy claim fails.  "The mere agreement to do a

6  wrongful act can never alone amount to a tort."  W.G. Platts, Inc. v. Platts, 73 Wn.2d 434, 439

7  (1968) (quoting W. Prosser, Law of Torts § 43, at 260 (3rd ed. 1964)).  "The gist of the action is

8  not the conspiracy charged, but the tort working damage to the plaintiff."  Id.  See also U.S. v.

9  Pan-Am. Petroleum Co., 55 F.2d 753, 778 (9th Cir. 1932) (collecting authorities in support of

10  the proposition that a civil action for conspiracy will not lie unless the combination results in

11  damage to the plaintiff).  Plaintiff, a representational organization of current residents of The

12  Theodora, alleges that VoA's agreement to not re-let units has "caused individuals to be

13  displaced from the Theodora and threaten[s] to cause additional displacement" and "has led to

14  about 80 precious low-income units at The Theodora sitting empty."  Complaint (Dkt. # 1) at

15  ¶ 3.C.11; Opposition (Dkt. # 29) at 23.  There are no facts alleged or evidence provided that

16  would support plaintiff's apparent leap from an agreement not to re-let units as they become

17  vacant to a program of forced displacements, premature evictions, or unspecified threats.  The

18  same paragraph of the purchase and sale agreement to which plaintiff objects compels VoA to

19  honor all of its obligations under any existing tenant leases or contracts.  Decl. of Camille Taylor

20  Ralston (Dkt. # 24), Ex. D. at ¶ 8(iv).  Plaintiff offers no evidence of involuntary departures, and

21  neither it nor its members can claim to have been displaced.

22          Plaintiff seems to be arguing that a higher vacancy rate made the sale of The

23  Theodora more likely, thereby threatening their continued residence.  To the extent such a causal

24  relationship exists, it arose long before the purchase and sale agreement was signed:  the loss of

25  tenants over a number of years contributed to VoA's operational losses and made it harder for

26  VoA to refinance the building, culminating in the decision to sell the building.  The sale was not,

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT          -11-

as plaintiff would have it, the cause of the empty units, but rather the result. Any suggestion that the agreement not to re-let prompted VoA to plan a change-of-use or caused a market rate sale is purely speculative. Plaintiff has not alleged or shown that the agreement in some way increased the rate of tenant loss after December 23, 2013. Even if it did, plaintiff has not alleged or provided any evidence from which one could conclude that the additional empty units have had a measurable or compensable effect on plaintiff or its members. Having failed to raise a genuine issue of fact regarding damages, plaintiff's civil conspiracy claim fails as a matter of law.

## CONCLUSION

The Court takes no joy in concluding that the law provides no remedy for plaintiff and its members. The impact on the remaining residents of The Theodora is serious and troubling. Leaving the safety and security of their neighborhood and the comfort of knowing and relying on each other as residents would be hard on anyone. The Court hopes that the City of Seattle and the many nonprofit agencies that serve our most vulnerable citizens will be able to fill this void and provide a reasonable and compassionate solution to this grave problem. For all of the foregoing reasons, however, VoA's motion for summary judgment (Dkt. # 20) is GRANTED and plaintiff's cross-motion for partial summary judgment (Dkt. # 29) is DENIED. Plaintiff's "Motion for Preliminary Injunction" (Dkt. # 52) is DENIED on the ground that plaintiff is unlikely to succeed on the merits of its claims.

Dated this 6th day of November, 2014.

*Mr S Lasnik*

Robert S. Lasnik
United States District Judge